Seated. Your Honor, since the case is adopted, 2-14-0294, people in the state of Illinois, plaintiff, appellee, please stop Gregory, defendant, and appellant. On your own behalf, defendant, appellant, attorney, Mr. Christopher McCoy. On your own behalf, plaintiff, appellee,  Are you both ready to proceed? You may be seated. May it please the court, counsel? My name is Christopher McCoy from the Office of the State Appellate Defender, and I represent Mr. Scott Gregory. The charges in this case arose from several e-mails which were sent to the village of Oswego and to the Oswego Police Department. At trial, the state introduced evidence that the defendant sent letters to the Oswego Police Department while the defendant was in jail on these charges. And the issue here on appeal is about those letters, whether or not they should have been excluded from evidence where they contained vast amounts of prejudicial information, most notably numerous references to various other crimes. Are you conceding that without the letters, the evidence was sufficient? We're not raising a reasonable doubt argument in this case. And our argument is that the introduction of these letters was not harmless. But the other crimes in these letters included everything from traffic tickets to domestic abuse, drug dealing, and even allegations of pedophilia. Just to give the court a few illustrations of these. For example, first, in one of the letters it said, quote, she lied. I've never hit a woman. I've never pulled a knife on her. Another example, what they say, I was a drug dealer that abused her and a last example, you're going to lie and say I'm a pedophile? What, you believe John McCullough's story? Let me guess, he didn't try to set up a child. He just happened to be walking around with his camera that day, right? And these are by no means all of the instances of other crimes in these letters, but just a few examples to show. They're not evidence of other crimes. They're evidence of accusations that have been leveled against your client, correct? Right, and that has been analyzed in other cases as in the matrix of other crimes evidence. And notably, the state, neither in its brief nor in the court below, has ever articulated why these allegations of other crimes were relevant to the offense at issue here, and they simply were not, and that's the core problem in this case. All of these other crimes are not relevant to the offense for which Mr. Gregory was on trial. Did defense trial counsel object when these were going back to the jury? Defense counsel renewed her objection at that time. She had previously objected in a motion of limine, and this issue was also included in the post-trial motion, which are the two requirements for an issue to be preserved for appeal. But she actually went beyond that. She objected, she renewed her objection prior to her idea, she renewed her objection again after the state rested their case, and finally she renewed her objection a third time when the court was deciding what exhibits to send back to the jury. And it's this third instance that the state in this brief kind of hangs its hat on. The state's argument is that the witnesses at trial only testified to these two highlighted statements in the letters and that defense counsel needed to then object to the letters going back to the jury. But as I mentioned, she did renew her objection, and so it's important to look at what the prior objections were. But she didn't ask to have them redacted, correct? Well, she did. During the motion in limine, she stated, quote, even if you let in this other evidence, you should be careful to limit the details of the other crimes to what is necessary to illuminate the issues to which the other crime was introduced. So that is an argument for redaction. She didn't actually use the word redact, but we have this argument here, and we also have the fact that implicit in her argument to exclude the whole of the letters is to exclude the most prejudicial parts of the letters. And, in fact, she pointed the judge's attention to these other crimes' evidence and some specific examples of what was prejudicial in these letters. Well, perhaps in contradiction to that, did she not argue to the jury in closing argument that she asked the jury to read the letters and see that they were written by someone who was frustrated and believed that his rights were being violated? Well, at that point, again, the judge had let in all of the letters. The judge had admitted this evidence over defense counsel's objection in the motion in limine, over her renewed objection several times during trial. So at that point, I mean, she's either left with the choice of just ignoring this evidence, telling the jury to ignore this evidence, or trying to what she was trying to do here, which was to minimize it, to say, look, this evidence isn't relevant to what we have here. It's the defendant just, quite honestly, somewhat rambling complaints about what's going on in various aspects of their life. So that didn't waive her multiple prior objections in any way. And as you bring up closing arguments, it's important to look at the fact that these closing arguments occurred before this discussion about what exhibits were going to go back to the jury during their deliberations. And in closing arguments, the prosecutor read different excerpts from the letters than those which the witnesses had read on the stand. And the prosecutor told the jury to compare the letters to the e-mails. He said, quote, as you go through them, meaning the letters, as you go through them, look at letter 13. So clearly the states and the court below, unlike the state on appeal, was clearly under the impression that the judge's prior rulings had admitted all of these letters into evidence and that all of these letters were going to go back to the jury. And, in fact, if you look at the court's specific ruling, he delayed his ruling on the motion to eliminate until he had read all of the letters. He didn't just rely on these two highlighted statements. And he specifically, in his written order, said that all of the letters were admissible into evidence. So by making this ruling, the courts made the threshold determination that all of these letters were relevant. And that's really the problem in this case is that these letters were not relevant and all of these letters should not have been admitted into evidence. And so if had. Did the contents of the letters themselves that expressed the defendant's frustration with being accused of all these things and which would explain why he engaged in or why he made the threat and engaged in cyberstalking? But that. Is that one way to look at it? That would be. Well, I guess first of all, that's not why the letters were admitted. The letters were admitted for admissions, admissions that he was the one who sent the e-mails. So if this were to be admitted as a intent exception that they show his intent with regard to sending the e-mails, that's a limited exception to the other crimes rule. And the jury was not instructed to that in any way to limit its consideration of these letters. In fact, there was for all the jury knew they could consider them for propensity. But I think even even putting that aside, if you look at the letters, these all of these other incidents are still just irrelevant to the ultimate question of whether or not he sent these e-mails. The state's theory was that these e-mails were sent based on an incident with Officer Unger when he was voluntarily admitted into the hospital. And then based on having to pay the bill for that is what caused this anger. But that's that's not referenced in these letters. Again, these letters are complaints about various other people, about his parents, his ex-girlfriend, his former boss. They don't enlighten anything about this trial. And and whatever minimal probative value they might have, it's vastly outweighed by all of this prejudicial information. Being accused of being a pedophile, being set up with a camera. It's allegations that he hit and tried to stab his ex-girlfriend. I mean, even the fact the traffic tickets, he said at one point in the letters, I've had twenty five tickets and been pulled over 50 plus times. I mean, this all leads to the impression that he's just a bad person who deserves punishment. There's no evidence or no indication that the trial court weighed this as either other crimes or other bad acts out of this, correct? The there was no limiting instruction given. The instruction that was given was just the general statements. The defendant made the statement. Yes, exactly. Exactly. What about you argue? You're not arguing sufficiency, but then you're kind of arguing sufficiency when you say the threats were somewhat vague, I guess. And then that's why this is not harmless error. Correct. Correct. And obviously it's a it's a different standard on appeal than if we were making a reasonable doubt argument because this issue is preserved. It's the state's burden to prove that that these these letters were harmless error. But as you were saying, the question in this case and why these are not harmless is because there's a reasonable question whether or not these emails were true threats, whether or not they were serious expressions of an intent, an intent to threaten with bodily harm. They because looking at the emails, it doesn't mention any specific threats to do bodily harm. They're just veiled statements. In fact, in in sentencing, the judge even says that these threats are, quote, cryptic and implied. So when you have something cryptic, reasonable people could disagree on whether or not. Beyond a reasonable doubt, these constituted true threats. Do you think the statement about the mayor's kids not showing up at home was vague? Well, he it is again, even in that email, there's no specific. I'm going to I'm going to abduct your children. I'm going to take them home. I mean, he's the way he phrases it. And a possible interpretation is, listen, you're not ignoring your problems. Why are you ignoring my problems? I've I've tried to try to get this redressed. And you keep ignoring what I feel is a valid complaint that I have now. It's obviously stated in a manner to get the get the mayor's attention. But there must be a threat of bodily harm in there. And that's why, again, as the judge said, this is this is cryptic. This is implied. There's nothing on the face of it. I'm going to kill you or anything to that extent. And that's why this is a reasonable question. And to also on that point, as as the court said, and people be Bedoya, the erroneous admission of other crimes, evidence carries with it a high risk of prejudice and ordinarily calls for reversal. So you've got these implied threats. You've got these these questions that the jury has. Well, are they going to just simply ignore their doubts now that they know, hey, this guy's been accused of everything from traffic tickets to what would be probably class X felonies? So why? If he did all these bad things before, then surely he means to do bad things from these emails. So we're going to infer some intent to these emails that because of this other crimes evidence. And especially when you look at Officer Unger, there were four emails that were sent. And it's important to remember that to sustain a charge of cyber stalking, there needs to be two communications. So four emails were sent to the police department. Of those, only two of them actually mention Officer Unger's names. And one of those doesn't even remotely contain a threat. And in fact, the evidence with regard to Officer Unger was so suspect that in closing, the state had to look at a typo in the email. How pray P-R-A-Y was misspelled P-R-E-Y and sort of infer some type of nefarious purpose from this misspelling. And so that, again, just there was not any concrete thing to say that introducing all of this other crimes evidence was harmless. And unless there's any further questions, Mr. Gregor, just ask. Thank you. Thank you. You will have a chance. Mr. Jacobs, you're ready. Good morning. May it please the court and counsel, I'm Jerry Jacobs on behalf of the plaintiff, Natalie, in this case. In this case, your honors, the defense theory was that the defendant did not actually send these emails and voicemail that were the subject of the charged offenses. And it's clear that the prosecutor sought to tie up any doubt that the defendant both sent the emails and had criminal intent to cyberstalk or threaten a public official by sending those emails. And to do that, the prosecutor brought forth nine letters and highlighted certain statements, excuse me, in the letters showing similarity between the letters and the emails and the voicemail. And so it's clear that the prosecutor was attempting to tie up any doubt in the jury's mind that the defendant was the author of the emails and had sent these emails with criminal intent. These other crimes or other bad acts pointed out by counsel in the letters, how did they go to prove this? I'm sorry? How did they go to prove this? Well, the prosecutor only highlighted certain statements that were similar to the emails. It's interesting because the statements in the letters are very rambling and it takes some looking at the letters to actually determine what is being said because they vault from one subject to the next. They are probative on the issue of the defendant's intent. Later, I guess, we can discuss what defense counsel was thinking by not objecting to the publication of these documents. She did object. She objected to, on relevancy grounds, really on her motion to eliminate. But at the exhibit conference, when it would have been appropriate to object to the publication, she simply renewed her objection. And it started off as the prosecutor asking, I suppose, defense counsel have an objection. Because that was the point where the court was determining whether or not all these exhibits would go back. And counsel said, well, I renew my objection for the motion to eliminate, but no. Regarding People's Exhibit 33, she just said no. She had no objection to it going back. Whose obligation? You know, whose obligation? I already said obligation. Okay. Let me finish my question. I'm sorry. The proponent of the evidence, especially when it concerns a limited admissibility, and in your view, the admissibility was limited to those statements that were carved out, that were pointed out by the state, correct? Would you agree with that? To some extent. My view is the remainder of the letters were probative of the defendant's method of operating, his modus operandi, showing that he had many strife-filled relationships, that he acted out against people who he felt he had been wronged by. So they were. But the purpose of it was to show that he was the author of the emails, correct? That was one purpose. And it should have been limited to that purpose. Would you agree? Based upon the trial court's ruling? I believe the trial court did examine all of the letters, and I can't – the record indicates that the trial court did a balancing test. It's somewhat of an assumption to understand what the court was thinking, but perhaps the court did believe that these letters elucidated what the defendant's modus operandi was, what his intent was. As a proponent of the evidence, doesn't the state have an obligation to ensure that only those portions of the letters that are relevant to the issues should go back to the jury? Yes. And the judge is the gatekeeper, and as a proponent of the evidence, it doesn't fall on the defendant's shoulders to carve out the state's relevant evidence. It's the state's obligation, isn't it? It is. My point is, though, that the state had only elicited those highlighted statements at the time, even about – When they were published to the jury, which is when those highlighted statements were read, correct? Yes. And the only evidence that came in at that point were the highlighted portions, correct? Correct. But then all the letters go back to the jury. I would also point out that in her opening statement prior to the trial, defense counsel – this goes to the invited error argument – defense counsel actually suggested that, again, that the defendant had not written these emails, and that the state would produce these letters, and they would be encouraged to read the letters and determine for themselves whether or not he had the intent. But that's the hand she's dealt. I mean, the state says, we want to put in these 10 letters, and the trial court reads them. It says, defense, you have any objection? And the defense objected, correct? She did object to the relevance. And in fact, she objected to relevance, but she also specifically noted that these letters contained prejudicial information about other bad acts and other crimes. Did she not? She did not at the motion in limine. I think she did subsequent at a preliminary conference where she indicated that there had been an order of protection mentioned in the letters and that there was some prejudicial information. She never asked for redaction. That was before opening statement. That was before opening statement. And the trial court said, no, they're coming in. The court, I believe, paraphrasing, said, I don't hear anything that changes my analysis of the letters. What was offered were the letters in their entirety. What the trial court said, I am loyal, let in, were the letters in their entirety, correct? Correct. So, I mean, again, you're looking at the defense. You're talking about an infinite error when the state offers it, defense objects, the court lets them all in, and the defense is left with that hand that they're dealt. They can either, as counsel indicated, ignore it or deal with it in the best way they can by minimizing it. The court still has discretion at the exhibit conference to redact or not allow those exhibits to go back. And although the state does have an obligation, of course, to say this is prejudicial information, the state, again, was seeking to admit everything, I'm supposing, to show that this defendant had a modus operandi of how he operated. That was not the argument, was it? The state didn't make a modus operandi argument, did they? Not in closing, no. I mean, if the trial court had analyzed this as other bad acts or other crimes and then in doing so had given a limiting instruction as to just an issue of identity or whatever the court felt was relevant, we might be in a little bit different position here, but the court did not instruct the jury on how to view these things such as pulling a knife on a woman or getting an order of protection, dealing drugs, being a child molester. I mean, all kinds of things are contained in these letters that the jury has no idea how to deal with. Correct. The only instruction that was given was to determine whether or not the defendant actually made a statement supporting the charge of crimes. It is significant, I believe, this morning that the defendant is not arguing there wasn't sufficient evidence, that properly admitted evidence wasn't sufficient to convict this defendant. And so although I didn't argue it specifically in the brief, it is the state's position then that this is akin to harmless error. As I've argued previously, the letters were primitive of the intent of the defendant, both the criminal intent through those highlighted statements and just the overall intent. It seems possible that a jury, I know when I looked at these letters, they seemed to me, I would have to search for specific statements to characterize them all as, all statements as evidence of other crimes is unfair. A lot of these statements were nonsensical and rambled about various relationships that this defendant had. So it's the state's position that just as they may have shown criminal intent, the purpose the state offered them for, they may have also shown that this was harmless rambling. At one point, defense counsel, excuse me, argued the defendant was merely exercising his First Amendment right. We consider his rights had been violated by Detective Unger. If there are no other questions, I will sit down. No further questions. Thank you very much. Thank you. Counsel, did you wish to offer a reply? It is the state's duty to safeguard the rights of everyone. And as part of that duty, they are also obligated to redact any prejudicial information from the evidence. In that case, it was a defendant's confession rather than these letters. But it's the same principle here. The state was the party who wanted to introduce this evidence. They were the one who sought to introduce it. They were the one that wanted it all sent back to the jury. I don't think the state is disputing that. They're arguing that defense counsel waived that objection. Yeah. And I understand your point. Yes. On to that state's argument. Any argument counsel would have made to not have the exhibit sent back to the jury is the exact same argument she made time and time again of why it shouldn't have been admitted in the first place, that they were irrelevant and that they were prejudicial. And the judge had ruled on that numerous times prior to this. So it was not her obligation to make the same objection that had been denied time and time again in which all the parties were under the impression that all of these exhibits were going to go back to the jury. The state argues now, not in a brief, but now that we can consider this as a harmless error. Do you agree with that? No. No. Should we consider that harmless error argument? Well, I would say no because this, again, was never raised in the state's brief. But if this court were to consider that, to illustrate that point, obviously the state can waive arguments. But if this court were to consider that, they talk about intent. But again, if this had been admitted on intent, the jury would have got a limiting instruction. Here they didn't do that. They were just given all these letters without any direction. And if I were a jury, the first thing I would do is read through what all these exhibits are. And when you're not given any guidance on what to do with them, the natural instinct, especially of a laying juror, is to look at propensity and say this is a bad person. He's done bad, at least been accused of doing bad things in the past. So I'm going to interpret these emails in the light of all that, all these prior accusations. And it is for that reason that this is not harmless. And I would, again, point out that this is not the same standard on appeal as if a reasonable doubt challenge had been made. It's not whether any reasonable person could have convicted. It's whether these letters were harmless beyond a reasonable doubt. And so that's why I disagree with counsel's contention that it is significant that we did not raise a reasonable doubt argument. Several cases we have, we raise issues about admissions of evidence without raising reasonable doubt. And unless there are further questions, Mr. Gregory would just ask that this court remain at this stage for the time. Thank you very much. We will be in recess until 10.30 or 11.30.